Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 263 | **DATE** | May 23, 2003 |
| **CASE TITLE** | Megliola, et al v. Andrew J. Maxwell | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The bankruptcy court's order which preliminarily enjoined the prosecution of Sutton v. Bernard, 00 C 6676, is affirmed. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | MAY 27 2003 | |
| x | Notices MAILED by judge's staff. | | date docketed | 19 |
| | Notified counsel by telephone. | | docketing deputy initials | |
| | Docketing to mail notices. | ED-7 FILED FOR DOCKETING | date mailed notice | |
| X | Mail AO 450 form. | 03 MAY 23 PM 3:38 | KAM | |
| | Copy to ______ | Date/time received in central Clerk's Office | mailing deputy initials | |
| KAM | courtroom deputy's initials | | | |

(Reserved for use by the Court)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 27 2003

LEONARD MEGLIOLA, JR. and JON LOGAN NELSON, on behalf of themselves and all others similarly situated,

Appellants,

v.

ANDREW J. MAXWELL, Chapter 7 Trustee for the bankruptcy estate of Debtors,

Appellee.

No. 03 C 263

**MEMORANDUM OPINION**

This is an appeal from an order of the bankruptcy court that preliminarily enjoined prosecution of the district court action captioned Sutton et al. v. Bernard et al. For the reasons explained below, the order of the bankruptcy court is affirmed.

**BACKGROUND**

**The Class Action**

Sutton v. Bernard, No. 00 C 6676 (the "Class Action"), is a class action lawsuit pending before this court in which the shareholder plaintiffs allege securities fraud against three officers of Marchfirst, Inc. ("Marchfirst"), a Chicago-based

19

consulting corporation.[1] The complaint, which was filed in October 2000, alleges that defendants misled the investing public and thereby artificially inflated the price of Marchfirst's stock by publicly issuing materially false and misleading statements and failing to disclose material facts necessary to make those statements not false and misleading.

**The Bankruptcy and the Trustee Action**

In April 2001, Marchfirst filed a voluntary petition for reorganization, pursuant to Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the District of Delaware. The case was soon converted to a Chapter 7 bankruptcy, and in July 2001, it was transferred to the United States Bankruptcy Court for the Northern District of Illinois. Andrew J. Maxwell was appointed Trustee of Marchfirst's estate. In February 2002, the Trustee filed an action (the "Trustee Action") against eleven former directors and officers of Marchfirst, including all three of the Class Action defendants. The Trustee alleges that the former directors and officers breached their fiduciary duties to Marchfirst.

**The Insurance Policies**

Prior to the filing of the bankruptcy case, Marchfirst had purchased a directors' and officers' corporate liability insurance

---

[1] Marchfirst itself was named as a defendant in the original complaint, but not in the amended complaint filed in May 2002. The three defendants in the Class Action are Robert Bernard, Robert Clarkson, and Bert Young.

policy (the "Primary Policy") from Illinois National Insurance Company ("Illinois National"). The Primary Policy covers (1) losses sustained by Marchfirst's directors and officers while acting in those capacities; and (2) losses sustained by Marchfirst arising from any securities fraud claim brought against it or from amounts paid to indemnify the officers and directors for claims brought against them. The limit of liability under the Primary Policy is $25 million.

Marchfirst had also bought two excess directors' and officers' liability policies (the "Excess Policies") from North American Specialty Insurance Company ("North American") and Federal Insurance Company ("Federal"), which provided excess coverage of $15 million and $10 million, respectively. The terms of the Excess Policies mirror the terms of the Primary Policy.

Both the Class Action plaintiffs and the Trustee seek to satisfy potential judgments in their actions from the assets of Marchfirst's former directors and officers and from the proceeds of the insurance policies. The insurers, however, are contesting coverage. Illinois National asserts an "insured vs. insured" exclusion to coverage. North American and Federal assert the same exclusions and also take the position that a "claim" by the insureds was not made during the policy period.

**The Adversary Proceeding Against the Class Action Plaintiffs**

On May 7, 2002, the Trustee brought an adversary proceeding and moved to preliminarily enjoin the Class Action plaintiffs from prosecuting their suit and to prohibit them from making any attempts to obtain possession of or control over the proceeds of the insurance policies. The Trustee also sought a declaration that the proceeds of the policies are property of the bankruptcy estate of Marchfirst. The Trustee relied on sections 105(a) and 362(a)(3) of the Bankruptcy Code.

Following briefing and oral argument, the bankruptcy court issued its opinion regarding the Trustee's motion. The court denied the relief sought pursuant to § 362(a), the automatic stay provision, reasoning that the insurance policy proceeds are not "property of the estate." However, the court determined that the Class Action should be enjoined pursuant to § 105(a):

> Section 105(a) of the Bankruptcy Code provides in pertinent part that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In assessing whether to issue an injunction under § 105(a), the Seventh Circuit does not require the court to evaluate the four factors that are usually considered in the decision to issue an injunction. A "bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to demonstrate an inadequate remedy at law or irreparable harm." Fisher v. Apostolou, 155 F.3d at 882, quoting In re L & S Industries, Inc., 989 F.2d 929, 932 (7th Cir. 1993).
>
> . . .
>
> According to the Seventh Circuit, "in limited circumstances, the trustee may temporarily block

adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently 'related to' her own work on behalf of the estate. 28 U.S.C. § 1334(b). The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include 'suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate,' Zerand-BernalGroup, Inc. v. Cox, 23 F.3d 159, 161-62 (7th Cir. 1994), or 'the allocation of property among creditors.' In re Memorial Estates, Inc., 950 F.2d 1364, 1368 (7th Cir. 1992); . . . In re Heath, 115 F.3d 521, 524 (7th Cir. 1997) ('related to' means 'likely to affect)." 155 F.3d at 882.

. . .

Here, a suit between third parties will affect the orderly administration of the estate. If the shareholders obtain a judgment against the directors and officers, the insurers will either make a payment to the plaintiffs or deny coverage. If coverage is denied, the Trustee and the shareholders will be in pursuit of mostly the same assets of mostly the same individuals. If the insurers agree to pay the shareholders, the amount that [Marchfirst] may be obliged to indemnify the directors and officers will be diminished. However, since the funds available to the directors and officers to pay a judgment are the same funds available to [Marchfirst] to indemnify them, a shortfall of funds would affect the administration of the estate. Furthermore, because the [Defendants/Class Action Plaintiffs] have not delineated a dollar figure for damages in their complaint against the directors and officers, a judgment obtained by the [Defendants/Class Action Plaintiffs] in the [Class] Action has the potential effect of leaving no funds available to pay a judgment obtained by the Trustee in the Trustee Action.

. . .

Section 105 of the Bankruptcy Code and the Seventh Circuit require this Court to enjoin any related proceeding which may have an effect on the bankruptcy case. There is no question that a judgment in the [Class] Action could have a significant effect on this bankruptcy estate. If the judgment is $100 million, the insurance policies maintained by [Marchfirst] would be wiped out, leaving no insurance proceeds for the Trustee to recover. Because the amount of damages are not delineated in the shareholders' complaint, the possibility exists that all of the proceeds of the

> insurance policies would be used to satisfy such a judgment.
>
> The plaintiffs in the [Class] Action will be enjoined from pursuing such a judgment. Nevertheless, it should be pointed out that the Defendants are enjoined only preliminarily and that as soon as the Trustee has completed his action, the Defendants may proceed with the [Class] Action.

Maxwell v. Megliola (In re Marchfirst, Inc.), 288 B.R. 526, 530-33 (Bankr. N.D. Ill. Dec. 16, 2002). The bankruptcy court entered a written order preliminarily enjoining the Class Action plaintiffs from prosecuting the Class Action, except for conducting discovery and any proceedings related to discovery, until the completion of the Trustee Action.

The Class Action plaintiffs appeal. We have granted Illinois National and North American's petition to intervene.

**DISCUSSION**

This court has jurisdiction over the instant appeals pursuant to 28 U.S.C. § 158(a)(1). On appeal from an order of the bankruptcy court, we review the bankruptcy court's factual findings under a "clearly erroneous" standard and its conclusions of law de novo. See In re Smith, 286 F.3d 461, 464-65 (7th Cir. 2002); Fed. R. Bankr. P. 8013.

Appellants raise the following issue on appeal: "whether the Bankruptcy Court erred in holding that Section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 105(a), empowers the Bankruptcy Court to block adjudication of a nationwide class action lawsuit, brought by non-creditors against non-debtors, upon a finding that

the Class Action is 'related to' an adversary proceeding filed by the Trustee."[2] (Appellants' Brief at 1.)

Appellants contend that the Seventh Circuit's ruling in Fisher v. Apostolou, 155 F.3d 876 (7th Cir. 1998), upon which the bankruptcy court relied in part, is limited to cases in which the plaintiffs whose action is sought to be enjoined are creditors of the estate who would benefit from the trustee's action. Because they are not creditors of the Marchfirst estate and would not benefit from proceeds obtained for the estate by the Trustee, appellants argue, Fisher does not apply in this case to allow the injunction of their Class Action.

Appellee, the Trustee, asserts that Fisher applies because there is no reason to treat shareholders' claims that are "related to" a bankruptcy differently from creditors' claims that are related. The Trustee further contends that, in evaluating whether a third-party proceeding is "related to" a bankruptcy, courts focus on the impact of that third-party action on the bankruptcy estate, not on the interests of the third party asserting the claim sought to be enjoined.

In order for a bankruptcy court to have jurisdiction to enjoin a proceeding (such as the Class Action), the proceeding must arise under, arise in, or be related to a bankruptcy case. See Celotex

[2] Section 105(a) of the Bankruptcy Code provides in pertinent part that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Corp. v. Edwards, 514 U.S. 300, 307 (1995) (citing 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a)). "Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate."[3] Celotex, 514 U.S. at 307 n.5. The Supreme Court stated in Celotex:

> We agree with the views expressed by the Court of Appeals for the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984 (1984), that Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate, and that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate. We also agree with that court's observation that a bankruptcy court's "related to" jurisdiction cannot be limitless.

514 U.S. at 308 (citations and quotation marks omitted). The Court observed in a footnote that several courts of appeals had adopted a broad test for determining the existence of "related to" jurisdiction--"whether the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy"--but that the Seventh Circuit has adopted a "slightly different" test. See id. at 308-09 n.6.[4]

---

3/ Like Celotex, the instant case involves the second type of "related to" proceeding.

4/ The Supreme Court seemed to favor this test, but did not adopt any particular test. 514 U.S. at 308-09 n.6.

According to the Seventh Circuit, a case is "related to" a bankruptcy "when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.'" In re Fedpak Sys., Inc., 80 F.3d 207, 213-14 (7th Cir. 1996) (quoting In re Memorial Estates, Inc., 950 F.2d 1364, 1368 (7th Cir. 1992) and In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987)).

In Fisher v. Apostolou, 155 F.3d 876 (7th Cir. 1998), the Seventh Circuit considered the scope of "related to" jurisdiction. The bankruptcy court's opinion in the instant case described the facts and holding of Fisher:

> In Fisher, the principals of Lake States Commodities, Inc. ran a scheme in which they defrauded hundreds of commodities investors. Actions were commenced in the District Court for the Northern District of Illinois by some of the investors against the principals of the corporation as well as against Gelderman, Inc. ("Gelderman"), a legitimate registered futures commission merchant through which the Lake States principals conducted their trades. The investors alleged violations of securities and commodities laws and common law fraud.
>
> Ultimately, Gelderman was the only entity from which anyone would recover damages. See In re Lake States Commodities, Inc., 230 B.R. 602 (Bankr. N.D. Ill. 1999). Involuntary chapter 7 bankruptcy petitions were filed against Lake States and one of its principals. The cases were administratively consolidated and orders for relief were entered. In the bankruptcy case that ensued, the trustee commenced an adversary proceeding. His complaint argued that the District Court claims were property of the estate, or, alternatively, that the District Court claims were sufficiently "related to" those of the trustee to support a § 105 injunction against the District Court plaintiffs, staying their lawsuits until the trustee completed his pursuit of the same defendants. The Bankruptcy Court issued an injunction against further prosecution of the District Court cases. In the order,

> the Bankruptcy Court concluded, inter alia, "that the trustee had satisfied the requirements for an injunction under § 105, finding that both parties were pursuing the same dollars from the same defendants to redress the same harms . . ." 155 F.3d at 880. The District Court to which the judgment was appealed dissolved the injunction. The Seventh Circuit then heard the case and issued the opinion which is of critical importance to the matter before this court.
>
> In the opinion, the Seventh Circuit reversed the District Court and reinstated the injunction. The problem to be resolved, as the Court viewed it, was that the investors were not suing the debtors, but "third parties who are not in bankruptcy, and who allegedly committed various acts of fraud against them - nondebtor tortfeasors . . ." Fisher v. Apostolou, 155 F.3d at 879. The Court found that "the investors' claims [were] sufficiently related to the property of the estate that their pursuit should be stayed pursuant to § 105 until the bankruptcy court has disposed of the trustee's claims based on the same underlying transactions." 155 F.3d at 878.

Maxwell, 288 B.R. at 530-31.

The bankruptcy court recognized that there is a difference between Fisher and this case because there, the district court case was brought by defrauded investors, while here, the district court case has been brought by allegedly defrauded shareholders. The bankruptcy court, however, did not think the distinction was dispositive and applied Fisher, stating that "this Court reads the Fisher decision as standing for the proposition that a trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin other litigation if it is sufficiently 'related to' his own work on behalf of the estate." Maxwell, 288 B.R. at 532.

We agree with the bankruptcy court's reading of Fisher, and appellants' attempt to distinguish the case fails.[5] Appellants argue that the plaintiffs in Fisher "were estate creditors and for this reason alone were required to 'wait their turn behind the trustee.'" (Appellants' Brief at 12.) We believe that this is an incorrect characterization of Fisher (the plaintiffs' status as creditors was not the single dispositive factor), and we do not find the factual distinction meaningful in any event. The general principles of "related to" jurisdiction of both Celotex and Fisher still apply. The relevant inquiry is not whether the Class Action plaintiffs are creditors of the estate. See Xonics, 813 F.2d at 131 ("[I]t is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction.") Rather, it is whether the Class Action affects the bankruptcy estate or the allocation of property among creditors. The bankruptcy court found that the Class Action affects the bankruptcy estate, due to the insurance situation, and accordingly preliminarily enjoined the Class Action.

---

[5] Appellants rely on In re Reliance Acceptance Group, Inc., 235 B.R. 548 (D. Del. 1999), to support their argument that the factual distinction is meaningful. Like appellants, though, Reliance fails to explain why a plaintiff's status of shareholder rather than creditor makes a difference in the "related to" analysis. Moreover, Reliance does not discuss the general principles of "related to" jurisdiction. We agree with the bankruptcy court that Reliance is neither controlling nor persuasive.

We believe that the bankruptcy court's findings and analysis regarding this issue were correct.[6]

**CONCLUSION**

For the foregoing reasons, the bankruptcy court's order, which preliminarily enjoined the prosecution of Sutton v. Bernard, 00 C 6676, is affirmed.

DATE: May 23, 2003

ENTER:

John F. Grady, United States District Judge

[6] Because we affirm the issuance of the preliminary injunction on this basis, it is unnecessary to reach the Trustee's argument (with which the intervenors' briefs are concerned) that the injunction could be affirmed on the basis that the insurance proceeds are property of the debtor's estate. (The bankruptcy court held that the proceeds do not belong to the estate.)